(No. 30625.—

CAROLINE LA COST, Appellee, *vs.* OMER MAILLOUX *et al.*, Appellants.

*Opinion filed September 24, 1948—Rehearing denied Nov. 18, 1948.*

John H. Beckers, of Kankakee, for appellants.

Anker C. Jensen, of Kankakee, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, Caroline La Cost, commenced this action in the circuit court of Kankakee County against the defendants, Omer and Mabel Mailloux, seeking a mandatory injunction compelling them to permit her to use a certain easement over their land for access to an alley. Defendants filed a counterclaim for a mandatory injunction requiring plaintiff to remove an eight-inch strip of her private cement sidewalk which encroaches upon their property. Evidence was heard and the chancellor entered a decree granting plaintiff the relief sought by her complaint and dismissing defendants' counterclaim for the want of equity. Defendants prosecute a direct appeal, a freehold being necessarily involved.

The facts are virtually undisputed. Plaintiff and defendants are adjoining landowners of improved residential property. Their lots extend in a north-and-south direction, with plaintiff occupying the property to the east and defendants residing in the premises to the west. The properties face a street to the south and are without an alley at the north or rear end where they abut on other privately owned land. The only available alley lies immediately to

the west of defendants' property and runs parallel to it. Plaintiff's lot is thus separated from the alley by land belonging to defendants.

Originally, the entire premises in question were owned by Thomas Beland, plaintiff's father, and, later, by his executors under the terms of his will. The properties then constituted a single parcel of land improved with two houses. In former years, there was an open stairway at the north end of the west house affording access to apartments on the upper floor of the building. Some time prior to the division of the property, the stairway was enclosed and extended. The extension was built to within one inch of the north line of the property. It contains two doors, one on the east side and the other on the west side, no part of either door being beyond three feet from the north line of the lot. The separation of the property was accomplished by two executor's deeds dated March 11, 1940, one part being conveyed to plaintiff and the other to her brother, George Beland. Plaintiff's deed to the east part of the property contains an express easement of three feet for the right of ingress and egress to and from the alley over the north end of the west property. On the other hand, the deed to her brother fails to mention an easement in favor of the adjoining land. Plaintiff caused her deed to be recorded on March 12, 1940, a few hours before the other deed was filed.

In July, 1941, defendants purchased the west property from George Beland. Thereafter, they constructed a concrete garbage container on that part of the north three feet of the lot adjoining the alley. Defendants are ready and willing to comply with the order of the chancellor requiring removal of this obstruction to the easement. In 1945, plaintiff built a private sidewalk along the west line of her property and, admittedly, the walk encroaches eight inches on defendants' land. The evidence further discloses that plaintiff has seldom, if ever, made use of her easement over

the west property. In carrying garbage and ashes to the alley, plaintiff customarily followed a well-defined path immediately north of the north line of defendants' property and thus avoided going through the extension of the west house by means of its east and west doors.

The chancellor found that plaintiff had an easement over the north three feet of the west property and held that she was entitled to the use of the easement as it existed when she obtained title to her property. Defendants were ordered to permit plaintiff to pass through the extension or annex and to leave the east and west doors unlocked or, in the alternative, to furnish plaintiff with keys to the doors. In attacking this part of the decretal order, defendants first contend that plaintiff took the easement subject to the burden and obstruction of the extension of their house. Defendants persist in ignoring the fact that the extension of their building is no real obstruction to the easement. The annex contains an east door and a west door. While some doors may be ornamental, or constructed to lend symmetry to a room or building, or, containing glass panels, nothing more than enlarged windows, we cannot be persuaded that the doors in question were built for any other reason than the natural, normal, functional and strictly utilitarian purpose of being opened and shut, thus permitting access to the rear of the west house and passage through the extension. Defendants purchased their property from plaintiff's brother with actual knowledge of the easement and had constructive knowledge of the servitude by reason of the prior recordation of plaintiff's deed. Furthermore, the extension and its doors were built years before defendants and their immediate grantor acquired the property. Additionally, the doors are located within the physical limits of plaintiff's right-of-way over the north three feet of the west property. Under the circumstances, the chancellor correctly held plaintiff has the right to use the doors for the purpose of gaining ingress

and egress to and from the alley and that the extension with its doors does not constitute an obstruction to her easement. In this same connection, it must be observed that, defendants' assertion to the contrary, the easement so construed does not constitute an invasion of their house. We observe that the annex or extension is only an enclosed stairway, has a concrete floor and merely leads to the basement and kitchen doors of the house. The extension does not form any integral part of the dwelling accommodations of defendants' house.

Defendants next contend that plaintiff did not act with reasonable promptness to obtain an injunction. This principle of equity is more familiarly known as *laches*. Mere prolonged delay less than the period of limitations in asserting a right does not alone establish *laches*. In addition to an unreasonable delay, the opposite party must show that he relied upon the other's inaction to his detriment. (*Brunotte* v. *DeWitt*, 360 Ill. 518; *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270.) Defendants do not contend they have been prejudiced by plaintiff's failure to assert her rights. Furthermore, the record discloses no testimony which might serve as a foundation for such an assertion.

Lastly, defendants contend that the chancellor erred in dismissing their counterclaim seeking a mandatory injunction to compel plaintiff to remove so much of her concrete walk as encroaches on their land. The record shows that, although the parties considered the construction of a joint sidewalk, plaintiff later proceeded to build her own walk without consulting defendants. The encroachment being admitted and there being no useful purpose to be served by the destruction of the west eight inches of the concrete walk, the chancellor ordered plaintiff to imbed brass plates in the concrete denoting the true boundary line between the properties. Defendant Omer Mailloux testified that, in 1945, he considered building a concrete walk along the east line of his property, that the existing encroachment did not

interfere with his use of the land, and that he desired the removal of the encroachment only to the end that there would be no mistake about the boundary line and to avoid the danger of plaintiff obtaining title by prescription to the eight-inch strip. On this state of the record, the chancellor quite properly ordered the installation of brass plates denoting the boundary line and dismissed defendants' counterclaim.

The decree of the circuit court of Kankakee County is affirmed.

*Decree affirmed.*